UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| JOSEPHINE GRACE LAPINA,<br><br>                Plaintiff,<br><br>     vs.<br><br>DAVID GIERLACH, FAMILY COURT<br>JUDGE; BARBARA SHINTANI, AN<br>INDIVIDUAL; JAN WATANABE, AN<br>INDIVIDUAL; SCOT BROWER, AN<br>INDIVIDUAL; EDWARD SMITH, AN<br>INDIVIDUAL; MICHAEL J. SUTTONII,<br>AN INDIVIDUAL;  CITY AND COUNTY<br>OF HONOLULU, A PUBLIC ENTITY;<br>AND  DOES 1 THROUGH 4,<br>INCLUSIVE;<br><br>                Defendants. | CIV. NO. 19-00452 LEK-KJM |

**ORDER: DENYING THE PORTION OF PLAINTIFF'S JULY 1, 2020
MOTION SEEKING SUMMARY JUDGMENT; DENYING DEFENDANTS SHINTANI
AND WATANABE'S REQUEST FOR SUMMARY JUDGMENT; AND GRANTING
DEFENDANTS BROWER AND SMITH'S REQUESTS FOR SUMMARY JUDGMENT**

On July 1, 2020, pro se Plaintiff Josephine Grace

Lapina ("Plaintiff") filed a document titled, in part "Motion

for Judicial Review, Declaration of All Defendants Regarding

Rights and Powers, Oath of Office." [Dkt. no. 62.]  That motion

has been construed as both a motion for summary judgment and a

motion seeking the recusal of this Court. [Minute Order, filed

7/10/20 (dkt. no. 63).]  Pro se Defendant Scot Brower ("Brower")

and Defendant Edward Smith ("Smith") filed their respective

memoranda in opposition to the Motion on August 11 and 13, 2020.

[Dkt. nos. 67, 69.]  Defendants State of Hawai`i, Attorney General Clare Connors, Office of the Attorney General, Judiciary, Child Support Enforcement Agency (collectively "State Defendants"), Barbara Shintani ("Shintani"), and Jann Watanabe ("Watanabe") filed their memorandum in opposition ("State Opposition") on August 14, 2020.[1]  [Dkt. no. 72.]

Plaintiff's request for recusal was denied in an entering order issued on October 22, 2020.  [Dkt. no. 76.]  Thus, only the portion of Plaintiff's motion seeking summary judgment ("Motion") remains before this Court.  The Court finds the Motion suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules").  For the reasons set forth below, Plaintiff's Motion is denied, Shintani and Watanabe's request for summary judgment pursuant to Local Rule 56.1(i) is denied, and Smith and Brower's respective Local Rule 56.1(i) requests for summary judgment are granted.

## **BACKGROUND**

Plaintiff initiated this action on August 21, 2019.  [Complaint for Violation of Civil Rights ("Complaint") (dkt.

---

[1] Plaintiff has apparently been misspelling Watanabe's name in her filings.  Compare Motion at 1 (listing "JAN WATANABE, an individual," in the caption), with State Opposition at 1 (referring to "Jann Y. Watanabe" as one of the filing parties).

no. 1).] The defendants named in the Complaint were: the State of Hawai`i ("the State"); the "Hawaii Child Enforcement Agency";[2] David Gierlach; Shintani; Watanabe; Smith; Brower; and Michael J. Sutton ("Sutton"). [Id. at PageID #: 2.] On September 24, 2019, the magistrate judge issued his findings and recommendation that the Complaint be dismissed with limited leave to amend ("F&R"), and this Court issued an order adopting the F&R on October 21, 2019. [Dkt. nos. 4, 6.] Therefore, the magistrate judge's findings of fact and conclusions of law in the F&R are now the findings and conclusions of this Court, and the magistrate judge's recommendations in the F&R are now the rulings of this Court. Plaintiff's claims against the State and CSEA were dismissed with prejudice, based on Eleventh Amendment immunity. [F&R at 10.] Plaintiff's claims against David Gierlach, a state court judge who presided over the family court proceedings that Plaintiff was involved in ("Judge Gierlach"), were dismissed with prejudice because he is protected by the doctrine of judicial immunity. [Id. at 11.] Plaintiff's claims against Shintani, Watanabe, Brower, Smith, and Sutton were dismissed without prejudice. [Id. at 13, 15-16, 18-19.]

Plaintiff filed her *First Amended* Complaint for Damages on November 20, 2019, and she filed her Second Amended

---

[2] This presumably referred to the State's Child Support Enforcement Agency ("CSEA").

Complaint for Damages ("Second Amended Complaint") on
December 10, 2019. [Dkt. nos. 9, 14.]  On February 7, 2020, the
magistrate judge issued an order granting Plaintiff leave to
file a third amended complaint by February 21, 2020. [Dkt.
no. 38.]  This Court ultimately extended Plaintiff's deadline to
file her third amended complaint to November 23, 2020. [Order
Granting in Part and Denying in Part Plaintiff's Appeal of the
Magistrate Judge's March 18, 2020 Entering Order and April 24,
2020 Order, filed 10/22/20 (dkt. no. 77), at 10.]  The parties
were instructed that, if Plaintiff did not file a third amended
complaint, this Court would rule upon Plaintiff's Motion as to
the claims in the Second Amended Complaint. [Minute Order,
filed 10/23/20 (dkt. no. 78), at 1.]  Because Plaintiff did not
file a third amended complaint, the Second Amended Complaint
remains the operative pleading.

    The Second Amended Complaint alleges three claims
arising from violations of Plaintiff's rights under the United
States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1985.
The alleged violations occurred during the course of the family
court proceedings, and related events, which Plaintiff asserts
resulted in the termination of her parental rights.  Shintani,
Watanabe, Smith, and Brower are named as defendants in the
Second Amended Complaint, as are the City and County of Honolulu

("the City"), Judge Gierlach, and Michael Sutton II.[3] [Second Amended Complaint at PageID #: 66-68.]  The first § 1983 and § 1985 claim alleges a violation of Plaintiff's substantive and procedural due process rights arising from the seizure of her children and the on-going withholding of her children from her ("Count I").  [Id. at PageID #: 76-77.]  The second § 1983 and § 1985 claim alleges a violation of Plaintiff's "due process right to be free from deception in the presentation of evidence to the county court by plaintiff" ("Count II").  [Id. at PageID #: 77.]  The third § 1983 and § 1985 claim alleges an unwarranted seizure of Plaintiff's children by social workers, court security guards, and/or sheriffs at the family court ("Count III").  [Id. at PageID #: 79.]  To the extent that she brings her claims against the City, Plaintiff argues the City is liable pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).[4]  [Second Amended Complaint at PageID #: 79-80.]

---

[3] Although it is not clear from the pleadings, the Michael Sutton II referred to in the Second Amended Complaint is the same person as the Michael J. Sutton referred to in the original Complaint.  According to Plaintiff, Sutton is her daughters' father.  See F&R at 5.

[4] This district court has stated:

> Monell held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694.  "Instead, it is when execution of a government's policy or custom, whether made by
> (. . . continued)

Plaintiff alleges Shintani submitted a false and unsubstantiated report, which was used against Plaintiff in the family court proceedings.  Plaintiff also alleges Shintani altered the contents of court orders.  [Id. at PageID #: 69.] Plaintiff alleges Watanabe committed perjury during her testimony before the family court judge.  [Id. at PageID #: 70.] Brower represented Plaintiff during the family court proceedings, and she was dissatisfied with the representation he provided.  For example, she alleges he had evidence that would have exculpated her of the allegations made against her during the family court proceedings, as well as evidence that would have incriminated Sutton, but Brower did not present the evidence to the family court.  Brower also failed to object to the family court's reliance on Shintani's statements, even though she was not available to be cross-examined by Brower. [Id. at PageID #: 70-71.]  Smith represented Plaintiff in the family court proceedings prior to Brower, but Smith withdrew as her counsel.  [Id. at PageID #: 69.]  Plaintiff was also dissatisfied with Smith's representation.  According to

---

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Id.

Yoshikawa v. City & Cnty. of Honolulu, CIVIL No. 18-00162 JAO-RT, 2021 WL 54363, at *6 n.7 (D. Hawai`i Jan. 6, 2021).

Plaintiff, Smith asserted Plaintiff's Fifth Amendment right against self-incrimination on her behalf and, when she questioned him, he said he was "'[t]rying to keep [her] out of jail.'" [Id.]  However, Plaintiff argues this was unnecessary, and he should have allowed her to decide whether or not to assert the right because the right is personal to her. Plaintiff also argues Smith was not present when her children were taken away from her.  [Id.]

Plaintiff alleges all of the defendants' actions ultimately resulted in the termination of her parental rights and the discontinuation of child support payments, without due process.  [Id. at PageID #: 71-72.]

## DISCUSSION

Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

The Second Amended Complaint does not specify which subsection of § 1985 Plaintiff's claims are based upon.  Based on the factual allegations of the case, only subsection (3), titled "Depriving persons of rights or privileges" applies.  See Second

7

Amended Complaint at ¶ 1 (alleging "Defendants' conduct deprived Plaintiff of her fundamental constitutional rights").

Section 1985(3) states, in pertinent part:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

## I.   **Improperly Named Defendants & Unserved Defendants**

The Second Amended Complaint does not name the State Defendants as parties.  See Second Amended Complaint at PageID #: 66 (caption); id. at PageID #: 67-68, ¶¶ 5-13 (identifying the parties).  Plaintiff added the State Defendants to the caption of the Motion.  See Motion at 1.  Because the State Defendants are not named as parties in the Second Amended Complaint, and because the Plaintiff's claims against the State in her original Complaint were dismissed with prejudice, see F&R at 10, Plaintiff does not currently have any claims against them in this case.  Therefore, to the extent that Plaintiff's Motion

seeks summary judgment in her favor against the State Defendants, the Motion is denied.

Judge Gierlach is named as a defendant in the Second Amended Complaint. [Second Amended Complaint at PageID #: 68, ¶ 10.] Because Plaintiff's claims against Judge Gierlach were previously dismissed with prejudice, see F&R at 11, Plaintiff's claims against Judge Gierlach in the Second Amended Complaint are stricken. To the extent that Plaintiff's Motion seeks summary judgment in her favor against Judge Gierlach, the Motion is denied.

Sutton is named as a defendant in the caption of the Second Amended Complaint, [Second Amended Complaint at PageID #: 66,] and he is referred to as "Independent Sales Rep ('M.S.')" in the section identifying the parties, [id. at PageID #: 68, ¶ 3]. See also id. at PageID #:69 ("D.G. on the bench asked the Respondent, M.S. if he had questions[.]"); id. at PageID #: 75 ("Respondent is an independent sales rep. in three different states."). The City is also named as a defendant. [Second Amended Complaint at PageID #: 67.] However, there is no evidence in the record that either Sutton or the City has been served with a complaint and summons in this case. On December 23, 2019, Plaintiff filed a form Certificate of Service, stating that:

> I certify that on date: 12-19-2019 I served a
> copy of this Motion on all party(ies) or their
> attorney(s) by _X_ Hand delivery or ____ Mail,
> addressed as follows:
>
> The clerk on the 1st floor received the summons,
> she file stamped on the back of this certificate.
>
> City and County of Honolulu
> Attorney General
> Office of the Attorney General.

[Dkt. no. 22.]  On the same date, she filed the same form for

Sutton, stating she made service by mail on December 19, 2019 to

his Arizona address.  [Dkt. no. 27.]  These Certificates of

Service apparently indicate Plaintiff's attempt to serve the

December 10, 2019 Second Amended Complaint.  The same day she

filed the Certificates of Service, Plaintiff filed a form motion

cover page, and she wrote "Complaint for Violation of Civil

Rights" in the title, with the City as one of the parties to

whom the "motion" is directed.  [Dkt. no. 21.]

> Fed. R. Civ. P. 4 states, in pertinent part:
>
> (b)  Issuance.  On or after filing the complaint,
> the plaintiff may present a summons to the clerk
> for signature and seal.  If the summons is
> properly completed, the clerk must sign, seal,
> and issue it to the plaintiff for service on the
> defendant.  A summons -- or a copy of a summons
> that is addressed to multiple defendants -- must
> be issued for each defendant to be served.
>
> (c)  Service.
>
>> (1)  In General.  A summons must be served
>> with a copy of the complaint.  The plaintiff
>> is responsible for having the summons and
>> complaint served within the time allowed by

10

Rule 4(m) and must furnish the necessary copies to the person who makes service.

(2)  By Whom.  Any person who is at least 18 years old and not a party may serve a summons and complaint.

(3)  By a Marshal or Someone Specially Appointed.  At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court.  The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 or as a seaman under 28 U.S.C. § 1916.

Unless Plaintiff complied with Fed. R. Civ. P. 4(d), which addresses waiver of service of a summons, Plaintiff was required to serve Sutton pursuant to Fed. R. Civ. P. 4(e) and to serve the City pursuant to subsection (j).

It does not appear that a summons was ever issued in this case.  Plaintiff concedes as much, because the instant Motion includes a "Request for Summons by U.S. Marshal and Proof of Service Forms for all Defendants."[5]  [Dkt. no. 62-24.] Because Plaintiff has not completed service upon the City and Sutton, her request for summary judgment in her favor as to her claims against them is denied.  The denial is without prejudice to Plaintiff's filing of a new motion for summary judgment against the City and/or Sutton after service and after

---

[5] A separate order will be issued addressing Plaintiff's request for a summons and to have the United States Marshal's Service attempt service.

sufficient time has elapsed for their responses to the Second Amended Complaint to be filed.

Thus, the merits of Plaintiff's Motion will only be addressed as to Shintani, Watanabe, Smith, and Brower.

## II.  **Shintani and Watanabe**

Relevant to the claims that are properly before this Court, Plaintiff argues Exhibits P, Q, R, S, T show that State employees violated her constitutional rights.  [Motion at 18.] Exhibit P is the family court's August 21, 2017 order regarding temporary custody and visitation ("8/21/17 Order").  [Dkt. no. 62-17.]  Exhibit Q is a letter, dated May 12, 2020, to Plaintiff from the Office of the Oldham County Attorney, Division of Child Support, transmitting a copy a letter from CSEA requesting the closure of the Kentucky child support case.[6] [Dkt. no. 62-18.]  Exhibit R is the Order Regarding Custody and Visitation, filed by the family court on March 28, 2018, following a January 8, 2018 hearing regarding permanent custody and visitation ("3/28/18 Order").  [Dkt. no. 62-19.]  Exhibit S is a Custody Investigation Unit Report by Watanabe, dated November 20, 2017 ("11/20/17 Report").  [Dkt. no. 62-20 at PageID #: 464-88.]  Exhibit T is "B. Shintani's Status Report/Recommendation," dated August 21, 2017 ("8/21/17

---

[6] According to Plaintiff, Sutton lived in Kentucky prior to moving to Arizona.  [Second Amended Complaint at PageID #: 75.]

Report"). [Id. at PageID #: 489-98.] Plaintiff also appears to challenge the contents of Shintani's and Watanabe's reports, in particular with regard to their reliance on certain police reports, which Plaintiff questions the accuracy of. See Motion at 28-32. Generally, she argues all of the defendants "have been conspiring since August 21, 2017 building a case against the Plaintiff and hiding evidence." [Id. at 33.]

-       Shintani is "a Custody Evaluator (Social Worker 4) in the Custody Investigation Unit at the Family Court of the First Circuit, State of Hawai`i." [State Defs.' Concise Statement of Facts ("State CSOF"), filed 8/14/20 (dkt. no. 71), Decl. of Barbara W. Shintani ("Shintani Decl.") at ¶ 1.] Watanabe holds the same position, but she is a Social Worker 5. [State CSOF, Decl. of Jann Y. Watanabe ("Watanabe Decl.") at ¶ 1.] There is no evidence in the record contesting Shintani and Watanabe's statements establishing that they are State employees. Thus, there are no genuine issues of material fact for trial, and this Court finds that Shintani and Watanabe are not officers, agents, or employees of the City, as Plaintiff alleges in paragraphs 8 and 9 of the Second Amended Complaint. See Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

Shintani conducts investigations and interviews to assist the family court in the development of interim custody and/or visitation orders, which remain in place until permanent determinations are made. [Shintani Decl. at ¶ 4.] Watanabe performs similar duties to assist the family court in the development of permanent custody orders. [Watanabe Decl. at ¶ 4.] Judge Gierlach referred the case involving Plaintiff, Sutton, and their three daughters to the Custody Investigation Unit for a custody study. [Id. at ¶ 7.]

Shintani conducted an investigation and recommended that Sutton be awarded temporary physical and legal custody of the girls, including being allowed to take them to live in Arizona. [Shintani Decl. at ¶ 6.] Watanabe interviewed Plaintiff at the family court and conducted individual videoconference interviews with Sutton and the three daughters, who were living with Sutton in Arizona at the time. Watanabe ultimately recommended that Sutton be awarded sole physical and legal custody, but that Plaintiff be allowed to have supervised visitation in Arizona. [Watanabe Decl. at ¶¶ 8-10.]

A.   **Eleventh Amendment Immunity**

Shintani and Watanabe argue Plaintiff's claims against them are barred by the State's sovereign immunity because Plaintiff's claims arise from actions they took in their official capacities. They therefore assert Plaintiff's Motion

should be denied as to her claims against them.  Further, they

ask this Court to enter summary judgment in their favor.[7]  The

allegations of the Second Amended Complaint discussed above and

Plaintiff's arguments in the Motion show that her claims against

Shintani and Watanabe arise from actions in their official

capacities as family court Custody Evaluators.  See, e.g.,

Motion at 37 ("Judge Kamalii asked the Plaintiff if she would

agree to have an interview with Barbara Shintani so that Judge

Kamalii can have a better understanding on father's visitation

schedule if mediation on the 21st of August 2017 did not work

_____

[7] Local Rule 56.1(i) states:

> If a party moves for summary judgment and
> the record establishes as a matter of law that
> another party is entitled to summary judgment
> against the movant, the court, in the court's
> discretion, may enter summary judgment against
> the movant after providing that party with oral
> or written notice and an opportunity to be heard.

See also Fed. R. Civ. P. 56(f)(1) ("After giving notice and a
reasonable time to respond, the court may: (1) grant summary
judgment for a nonmovant[.]").  The State Opposition provided
Plaintiff with written notice, and Plaintiff had an opportunity
to respond to the State Opposition in a reply.  See Minute
Order, filed 7/10/20 (dkt. no. 63) (stating filing deadlines
related to Plaintiff's Motion).

"In order to obtain summary judgment pursuant to Local
Rule 56.1(i), a nonmoving party must establish that there is 'no
evidence from which a jury could reasonably decide' the relevant
claim in the moving party's favor."  Sidlo v. Kaiser Permanente
Ins. Co., Civ. No. 16-00073 ACK-KSC [CONSOLIDATED], 2016 WL
6821787, at *6 (D. Hawai`i Nov. 17, 2016) (quoting Pac.
Radiation Oncology, LLC v. Queen's Med. Ctr., Civ. No. 12-00064
LEK-KSC, 2014 WL 6749117, at *13 (D. Haw. Nov. 30, 2014)).

out."); id. at 41 ("Barbara Shintani's report and Jan Watanabe's CIU report was conducted without first having jurisdiction.").

    This district court has recognized that:

> "The Eleventh Amendment shields unconsenting states from suits in federal court," K.W. ex rel. D.W. v. Armstrong, 789 F.3d 962, 974 (9th Cir. 2015) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996)), and bars individuals from bringing lawsuits against a state or an instrumentality of a state for monetary damages or other retrospective relief. See Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 865 (9th Cir. 2016). Furthermore, it "applies regardless of the nature of relief sought and extends to state instrumentalities and agencies." Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ., 616 F.3d 963, 967 (9th Cir. 2010) (citing Papasan v. Allain, 478 U.S. 265, 276, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). Suits against state officials in their official capacities are likewise barred because they constitute suits against the state itself. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).
>
> . . . Under the Ex parte Young exception to Eleventh Amendment immunity, "private individuals may sue state officials in federal court for **prospective** relief from ongoing violations of federal law, as opposed to money damages, without running afoul of the doctrine of sovereign immunity." Koala v. Khosla, 931 F.3d 887, 895 (9th Cir. 2019) (citing Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254–55, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011)). Ex parte Young is based on the proposition "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." Va. Office for Prot. & Advocacy, 563 U.S. at 255, 131 S. Ct. 1632 (citation omitted). It does not apply "when 'the state is the real

substantial party in interest.'" <u>Id.</u> (citations
omitted).

<u>Gomes v. Hawai`i</u>, CIVIL NO. 20-00494 JAO-KJM, 2020 WL 6880832,
at *3 (D. Hawai`i Nov. 23, 2020) (emphasis in <u>Gomes</u>).

Plaintiff seeks money damages in this case.  <u>See,
e.g.</u>, Second Amended Complaint at PageID #: 77 (alleging that,
as a result of the actions at issue in Count I, Plaintiff "has
suffered, and will continue to suffer, damages, including but
not limited to economic injury, physical and/or mental anxiety
and anguish according to proof at trial" and that, because they
"acted intentionally and/or with a conscience disregard for
[her] constitutional rights," she "is entitled to recover
punitive damages against these individual defendants").  In
addition, although not clearly stated in the Second Amended
Complaint, Plaintiff apparently seeks an order ruling that the
family court's orders were invalid and returning her children to
her custody.  <u>See</u> Motion at 44.  Thus, Plaintiff seeks money
damages and retrospective relief to remedy what Plaintiff
alleges were constitutional violations during the family court
proceedings.

There is no waiver by the State of its sovereign
immunity from these types of claims.  <u>Accord</u> <u>Edelman v. Jordan</u>,
415 U.S. 651, 677 (1974) (stating that, in a § 1983 action, "a
federal court's remedial power, consistent with the Eleventh

17

Amendment, is necessarily limited to prospective injunctive relief, and may not include a retroactive award which requires the payment of funds from the state treasury" (citations omitted)).[8]  Thus, Plaintiff's claims against Shintani and Watanabe are barred, if Plaintiff asserts her claims against them in their official capacities.  See Will, 491 U.S. at 71.

Plaintiff's Second Amended Complaint does not clearly state whether she is pursuing her claims against Watanabe and Shintani in their official capacities, their individual capacities, or both.  See Second Amended Complaint at PageID #: 66 (listing each in the caption as "an individual"); id. at PageID #: 67, ¶¶ 8-9 (alleging each is "an individual residing in the County of Honolulu, and an officer, Agent, and/or Employee of" the City).  This district court has stated:

> When a complaint is silent as to capacity, courts presume that the officials are being sued in their individual capacities.  Shoshone-Bannock Tribes v. Fish & Game Comm'n, Idaho, 42 F.3d 1278, 1284 (9th Cir. 1994) (beginning with this presumption but finding the caption controlling when the complaint is silent).  When a complaint specifies that officials are being sued in their official capacities, however, there is no such presumption.  Bisom v. Com. Of [sic] N. Marina Islands, 163 F.3d 605 (9th Cir. 1998).

---

[8] Edelman has been overruled on other grounds by Will v. Michigan Department of State Police, 491 U.S. 58 (1989).  See, e.g., Soderstrom v. Ocampo, Case No. SACV 19-422 JVS(KESx), 2019 WL 8014552, at *10 (C.D. Cal. June 17, 2019).

Reyes v. Hawai`i, CIVIL NO. 17-00143 JAO-RT, 2019 WL 1746570, at *5 n.2 (D. Hawai`i Apr. 18, 2019).[9]  Because the caption emphasizes that Watanabe and Shintani are individuals, and because Plaintiff's Second Amended Complaint must be liberally construed due to her pro se status, see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), her claims against Shintani and Watanabe are construed as claims against them in their individual capacity.

"State officials sued in their individual capacities . . . are persons for the purposes of § 1983 and may be held personally liable for damages based upon actions taken in their official capacities." Long v. Sugai, No. CV 19-00235 JMS-RT, 2020 WL 7482010, at *6 (D. Hawai`i Dec. 18, 2020) (citing Hafer v. Melo, 502 U.S. 21, 27-28 (1991)).  Further, "because they are treated as private individuals, the Eleventh Amendment 'does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983.'"  Id. at *6 n.2 (quoting Hafer, 502 U.S. at 30-31).  Therefore, Shintani and

---

[9] This district court has also stated that, "[w]hen it is unclear whether defendants are sued in official or individual capacities, the court must examine '[t]he course of proceedings' to determine the capacity in which each defendant is sued." Nakamura v. Honolulu Cmty. Coll., Civil No. 13-00054 JMS-BMK, 2013 WL 3147266, at *3 (D. Hawai`i June 18, 2013) (some alterations in Nakamura) (some citations omitted) (quoting Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985)).  However, there is no instructive "course of proceedings" in this case.

Watanabe's request for summary judgment in their favor, on the
basis of Eleventh Amendment immunity, is denied.[10]

### B.   **Merits of Plaintiff's Claims**

The Court next turns to Plaintiff's argument that she
is entitled to summary judgment as to all of her claims against
Shintani and Watanabe.   This district court has stated:

> "When the party moving for summary judgment
> would bear the burden of proof at trial, 'it must
> come forward with evidence which would entitle it
> to a directed verdict if the evidence went
> uncontroverted at trial.'"   C.A.R. Transp.
> Brokerage Co., Inc. v. Darden Rests., Inc., 213
> F.3d 474, 480 (9th Cir. 2000) (quoting Houghton
> v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)).
> In this instance, then, Plaintiff "must establish
> beyond peradventure all of the essential elements
> of the claim . . . to warrant judgment in his
> favor." Fontenot v. Upjohn Co., 780 F.2d 1190,
> 1194 (5th Cir. 1986).   Put another way, "his
> showing must be sufficient for the court to hold
> that no reasonable trier of fact could find other
> than for the moving party." Calderone v. United
> States, 799 F.2d 254, 259 (6th Cir. 1986)
> (quoting W. Schwarzer, Summary Judgment Under the
> Federal Rules: Defining Genuine Issues of
> Material Fact, 99 F.R.D. 465, 488 (1984)).

Jou v. Adalian, Civ. No. 15-00155 JMS-KJM, 2017 WL 2990280, at
*3 (D. Hawai`i July 13, 2017) (alteration in Jou).   As to
Plaintiff's § 1983 claims:

> To be held liable, each Defendant's personal
> conduct must have either (1) directly subjected
> Plaintiff to a deprivation of federal rights; or

---

[10] Shintani and Watanabe's Local Rule 56.1(i) request for
summary judgment is based solely on Eleventh Amendment immunity.
The denial of their request is without prejudice to their filing
of a future motion for summary judgment on other grounds.

> (2) indirectly caused Plaintiff to be subjected
> to the same. Lacey v. Maricopa Cnty., 693 F.3d
> 896, 915 (9th Cir. 2012). A person "subjects"
> another to a rights violation if he "does an
> affirmative act, participates in another's
> affirmative acts, or omits to perform an act
> which he is legally required to do that causes
> the deprivation of which complaint is made." Id.
> (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th
> Cir. 1978)). A person can "cause" another to be
> subjected to a rights violation "by setting in
> motion a series of acts . . . which the actor
> knows or reasonably should know would cause . . .
> the constitutional injury." Id. (quoting Duffy,
> 588 F.2d at 743). In the latter scenario, the
> defendant "must have at least the same level of
> intent as would be required if the [defendant]
> were directly to deprive the [plaintiff] of his
> constitutional rights." Id. at 916.

Long, 2020 WL 7482010, at *6 (alterations in Long).

Plaintiff has submitted Shintani's 8/21/17 Report and

Watanabe's 11/20/17 Report as evidence in support of her claims.

However, when viewed in the light most favorable to Shintani and

Watanabe,[11] neither these reports, Plaintiff's other evidence,

nor the current record as a whole is insufficient to establish

that either Shintani or Watanabe "(1) directly subjected

Plaintiff to a deprivation of federal rights; or (2) indirectly

caused Plaintiff to be subjected to the same." See id.

(citation omitted). Plaintiff has therefore failed to establish

the essential elements of her § 1983 claims against Shintani and

---

[11] When a district court rules on a motion for summary
judgment, the record must be viewed in the light most favorable
to the nonmoving party. Crowley v. Bannister, 734 F.3d 967, 976
(9th Cir. 2013).

Watanabe, and she is not entitled to summary judgment as to those claims because she has not presented evidence that would have entitled her to a directed verdict if it was uncontested at trial.  See C.A.R. Transp., 213 F.3d at 480.

Further,

to make out a violation of § 1985(3), . . . the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983).  Because Plaintiff has failed to establish the second element of her § 1985(3) claims against Shintani and Watanabe, it is not necessary to address the other elements.  Plaintiff is not entitled to summary judgment as to her § 1985(3) claims against Shintani and Watanabe because she has not presented evidence that would have entitled her to a directed verdict if it was uncontested at trial.

Plaintiff's Motion is therefore denied, to the extent that it seeks summary judgment as to all of Plaintiff's claims against Shintani and Watanabe.

## III. **Smith and Brower**

Smith states he represented Plaintiff and, on September 8, 2016, he filed a Petition for Paternity or for Custody, Visitation and support Orders after Voluntary Establishment of Paternity in the family court in Lapina v. Sutton, FC-P No. 16-1-6390. [Smith's mem. in opp., Decl. of Def. Edward Smith ("Smith Decl.") at ¶ 8.] He acknowledges "[t]hat the attorney-client relationship deteriorated between [him] and Plaintiff to the point that Plaintiff did not follow [his] legal advice and Plaintiff began to cut off communicating with [him] by the middle of September 2017." [Id. at ¶ 9.] The family court granted his request to withdraw as counsel on November 27, 2017, and he no longer represented Plaintiff after that date. [Id. at ¶¶ 10-11.] Smith states he is a United States citizen and, at the time Plaintiff filed this action, he resided and was domiciled in Hawai`i. [Id. at ¶ 3.] Smith "was never an employee, officer, and/or agent of any governmental entity including the City and County of Honolulu during any time referenced in Plaintiff's complaint as when Plaintiff alleges her claims were created and/or came into existence." [Id. at ¶ 6.] Further, he never entered into an agreement with a government agent to deprive, or interfere with, Plaintiff's constitutional rights or anyone else's. [Id. at ¶ 7.]

23

Smith argues Plaintiff's Motion should be denied as to her claims against him, and this Court should grant summary judgment in his favor, because Plaintiff has not established that subject matter jurisdiction in this case exists.  Smith asserts diversity jurisdiction does not exist because both he and Plaintiff are citizens of the same state, and he argues federal question jurisdiction does not exist because he is "not in any way affiliated with any government entity."  [Smith's mem. in opp. at 3.]  Even if subject matter jurisdiction exists, Smith argues the Motion should be denied, and summary judgment should be granted in his favor, because he was not a state actor during the relevant period, and there is no evidence that he conspired to deprive, or interfere with, Plaintiff's constitutional rights or anyone else's.

Similarly, Brower submits a declaration stating he is a United States citizen and, at the time Plaintiff filed this case, he resided and was domiciled in Hawai`i.  [Brower's mem. in opp., Decl. of Scot Stuart Brower ("Brower Decl.") at ¶¶ 3, 6.]  He also denies being an employee, officer, or agent of the City, or any other government entity, and he denies entering into an agreement with government officials to deprive or interfere with Plaintiff's constitutional rights, or anyone else's.  [Id. at ¶¶ 5, 7.]  Brower also urges this Court to deny Plaintiff's Motion as to the claims against him and to grant

24

summary judgment in his favor, based on the same arguments that Smith raises.

### A.   <u>Jurisdiction</u>

Smith and Brower argue this Court lacks subject matter jurisdiction over Plaintiff's claims against them because diversity jurisdiction does not exist.  28 U.S.C. § 1332(a)(1) states: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between - (1) citizens of different States[.]"  However, whether diversity jurisdiction exists is irrelevant because Plaintiff's original Complaint alleged § 1983 and § 1985 claims, as does her current Second Amended Complaint, and therefore federal question jurisdiction exists.  <u>See</u> 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  To the extent that Smith and Brower each seek summary judgment in his favor based on a lack of subject matter jurisdiction, the requests are denied.

### B.   <u>Section 1983 Claims</u>

Plaintiff's Motion seeks summary judgment in her favor as to all of her claims in this case.  Smith and Brower argue Plaintiff's § 1983 claims against them fail because they were not acting under color of state law, <i>i.e.</i> they were not state

actors, during the events that form the basis of Plaintiff's
claims.  They urge this Court to deny Plaintiff's Motion and
grant summary judgment in their favor, pursuant to Local
Rule 56.1(i).[12]  Plaintiff has not presented any evidence
contesting Smith's and Brower's respective statements that he
was not a government employee, officer, or agent.  Therefore,
there are no genuine issues of material fact for trial, and this
Court finds that Smith and Brower are private parties for
purposes of Plaintiff's § 1983 claims.

As previously noted in this case:

> A private party may, under limited circumstances,
> act under color of state law when "he is a
> willful participant in joint action with the
> State or its agents." Dennis v. Sparks, 449 U.S.
> 24, 27 (1980).

> The Ninth Circuit recognizes "at least four
> different criteria, or tests used to identify
> state action: '(1) public function; (2) joint
> action; (3) governmental compulsion or coercion;
> and (4) governmental nexus.'" Kirtley v. Rainey,
> 326 F.3d 1088, 1092 (9th Cir. 2003) (quoting
> Sutton v. Providence St. Joseph Med. Ctr., 192
> F.3d 826, 835-36 (9th Cir. 1999)). "Satisfaction
> of any one test is sufficient to find state
> action, so long as no countervailing factor
> exists." Id.  Under any of the four tests,
> however, "the central question remains whether
> the alleged infringement of federal rights [is]
> fairly attributable to the government." Id. at

---

[12] As with the request by Shintani and Watanabe, this Court
can consider Smith and Brower's Local Rule 56.1(i) requests for
summary judgment because their memoranda in opposition provided
Plaintiff with written notice, and she had the opportunity to
respond in a reply.

1096 (citation and internal quotation marks
omitted).

   To establish satisfy the "public function"
test, the plaintiff must show that a private
entity carried out a function that is
"traditionally the **exclusive** prerogative of the
State." Rendell-Baker v. Kohn, 457 U.S. 830, 842
(1982) (emphasis in original).  To establish
"joint action," a plaintiff must show willful,
joint participation between the state and a
private actor in which "the state has so far
insinuated itself into a position of
interdependence with the private [actor] that it
must be recognized as a joint participant in the
challenged activity. This occurs when the state
knowingly accepts the benefits derived from
unconstitutional behavior." Florer v.
Congregation Pidyon Shevuyim, N.A., 639 F.3d 916,
926 (9th Cir. 2011) (citations and internal
quotation marks omitted).

   Under the "government compulsion/coercion
test," the court considers whether the "coercive
influence or 'significant encouragement' of the
state effectively converts a private action into
a government action." Kirtley, 326 F.3d at 1094
(citations omitted).  "Under the governmental
nexus test, a private party acts under color of
state law if there is a sufficiently close nexus
between the State and the challenged action of
the regulated entity so that the action of the
latter may be fairly treated as that of the State
itself." Ohno v. Yasuma, 723 F.3d 984, 995 n.13
(9th Cir. 2013) (internal quotation marks and
citation omitted).

[F&R at 13-15 (alterations and emphasis in the F&R) (some

citations omitted).]

   The record in this case clearly establishes that Smith

and Brower each represented Plaintiff in a family court

paternity case.  See, e.g., Smith Decl. at ¶ 8.  Because that is

not traditionally an exclusive state function, Plaintiff has not, and cannot, establish that either Smith or Brower was a state actor under the public function test.  Similarly, it cannot be said that Smith's, or Brower's, actions in representing her "may be fairly treated as that of the State itself."  See Ohno, 723 F.3d at 996 n.13 (citation and quotation marks omitted).  Thus, Plaintiff has not, and cannot, establish that either Smith or Brower was a state actor under the public nexus test.

Plaintiff has presented no evidence that would support a finding that either Smith or Brower acted jointly with the State during his representation of Plaintiff, nor has she presented any evidence that would support a finding that either of them acted under State coercion or with significate State encouragement.  Further, nothing in the record suggests that Plaintiff could present such evidence if her claims against Smith and Brower went to trial.  Thus, Plaintiff has not, and cannot, establish that either Smith or Brower was a state actor under either the joint action test or the government compulsion/coercion test.

Because Plaintiff has failed to establish an essential element of her § 1983 claims against Smith and Brower, she has not presented evidence that would have entitled her to a directed verdict if it was uncontested at trial.  Her Motion is

therefore denied to the extent that it seeks summary judgment in Plaintiff's favor as to those claims.  Further, because "there is no evidence from which a jury could reasonably" return a verdict in Plaintiff's favor as to those claims, this Court grants summary judgment in favor of Smith and Brower as to Plaintiff's § 1983 claims.  See Sidlo, 2016 WL 6821787, at *6 (citation and internal quotation marks omitted).

   **C.   Section 1985(3) Claims**

        As to Plaintiff's § 1985(3) claim, Smith and Brower have denied, under penalty of perjury, entering into any agreement with government agents to deprive or interfere with Plaintiff's constitutional rights, or with the constitutional rights of anyone else.  [Smith Decl. at ¶ 7; Brower Decl. at ¶ 7.]  Plaintiff has not presented any evidence contradicting their statements, nor is there any indication in the record that Plaintiff could present such evidence if her claims went to trial.  Plaintiff therefore has not, and cannot, establish that either Smith or Brower were part of a conspiracy to violate her constitutional rights.  Because Plaintiff has failed to establish the first element of her § 1985(3) claims against Smith and Brower, it is not necessary to address the other elements.

        Plaintiff is not entitled to summary judgment as to her § 1985(3) claims against Smith and Brower because she has

29

not presented evidence that would have entitled her to a
directed verdict if it was uncontested at trial.  Plaintiff's
Motion is therefore denied, to the extent that she seeks summary
judgment in her favor as to her claims.  Further, because "there
is no evidence from which a jury could reasonably" return a
verdict in Plaintiff's favor as to those claims, this Court
grants summary judgment in favor of Smith and Brower as to
Plaintiff's § 1985(3) claims.

### D.   **Other Claims**

The Motion appears to challenge Smith and Brower's
"[l]egal ethics" and the manner in which they carried out their
"professional duties" during her representation.  [Motion at
22.]  As previously noted, the allegations of Plaintiff's Second
Amended Complaint show that Plaintiff was dissatisfied with both
Smith's representation and Brower's representation.  Plaintiff's
arguments suggest that she may have been trying to assert legal
malpractice claims against Smith and Brower.  Although this
Court must liberally construe Plaintiff's pleadings, this Court
declines to construe Plaintiff's Second Amended Complaint as
alleging legal malpractice claims.  Plaintiff clearly labeled
her claims against all of the defendants as § 1983 and § 1985
claims.  See Second Amended Complaint at PageID :# 76, 77, 79.
Further, she amended her complaint twice, and she had the

opportunity to amend her complaint a third time, but she chose not to do so.

Even if Plaintiff may have wanted to assert other claims against Smith and Brower, the only claims in this case against them are § 1983 claims and § 1985 claims.  Because this Court granted summary judgment in their favor as to those claims, there are no claims remaining against either Smith or Brower.

**CONCLUSION**

For the foregoing reasons, the portion of Plaintiff's July 1, 2020 motion seeking summary judgment is HEREBY DENIED in its entirety.  The Court also rules as follows on the defendants' Local Rule 56.1(i) requests for summary judgment: Shintani and Watanabe's request is DENIED; Smith's request is GRANTED; and Brower's request is GRANTED.

Summary judgment is GRANTED in favor of Smith and Brower as to all of Plaintiff's claims against them.  The Clerk's Office is DIRECTED to terminate them as parties to this case on **February 3, 2021**, unless Plaintiff files a timely motion for reconsideration of the portion of this Order addressing her claims against Smith and Brower.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 19, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

JOSEPHINE GRACE LAPINA VS. DAVID GIERLACH, ET AL; CV 19-00452
LEK-KJM; ORDER DENYING THE PORTION OF PLAINTIFF'S JULY 1, 2020
MOTION SEEKING SUMMARY JUDGMENT; DENYING DEFENDANTS SHINTANI AND
WATANABE'S REQUEST FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANTS
BROWER AND SMITH'S REQUESTS FOR SUMMARY JUDGMENT